IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TRACY G. ALLEN, # 129732,   :

  Plaintiff,      :

vs.         :  CIVIL ACTION 07-0124-CG-C

MICHAEL FUQUA,    :

  Defendant.     :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983 and paid the $350 filing fee.[1]  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## I.  Complaint (Doc. 6).

The complaint before the Court was filed pursuant to the Court's order directing plaintiff to file his complaint on this Court's complaint form for a § 1983 action  In his superseding amended complaint (Doc. 6), plaintiff makes the following allegations

---

[1]Plaintiff has been previously found to be a "three-striker" under 28 U.S.C. § 1915(g) by this Court.

concerning a citation for a violation of institutional rules that he received on September 17, 2006.  In segregation after the trays had been picked up, the "chow slots" were about to be closed when inmate Rickey Parker in 12-D-8 cell threw the string attached to his laundry bag to inmate James McDonald in 12-D-7 cell.  The string, however, caught on plaintiff's "chow lock."  The sole defendant, Michael Fuqua, snatched the entire laundry bag and threw it in the trash.  The next day plaintiff received a citation for violating institutional rules even though his "chow slot" was closed, but the defendant must have assumed that plaintiff was lying on the floor.  Plaintiff contends that this activity is not illegal in segregation and that receiving restriction for thirty days for this alleged violation caused him to be unable to receive the Christmas package sent by his mother.  Plaintiff further argues that he was falsely accused and that this is the warden's rule.

For relief, plaintiff wants the citation expunged from his Central Records' file, $50,000 from the defendant in his official capacity, $500 for each day on restriction, to be sent to a federal mental facility for treatment, to have cosmetic surgery for the removal of his facial wrinkles and the acne spot on his left cheek, and to have a cell phone, television, and cassette/CD player in his cell.

## II.  Standards of Review Under 28 U.S.C. § 1915A(b).

Under 28 U.S.C. § 1915A(b)(1), the Court is required to review a complaint filed by a prisoner against a governmental official and to "dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a

claim upon which relief may be granted[.]"[2]  This review "applies to any suit by a
prisoner against certain government officials or entities regardless of whether that
prisoner is or is not proceeding IFP." *Martin v. Scott,* 156 F.3d 578, 579 (5th Cir.), *cert.
denied,* 527 U.S. 1041 (1999).  The Court observes that in the present action plaintiff is
suing a government official and has paid the $350 filing fee.[3]

Under 28 U.S.C. § 1915A(b), a claim may be dismissed as "frivolous where it
lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct.
1827, 1831-32 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the
defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to

---

[2]Section 1915A(a) and (b)(1) and (2) provide:

>        (a)  The court shall review, before docketing, if feasible or, in any event,
> as soon as practicable after docketing, a complaint in a civil action in which a
> prisoner seeks redress from a governmental entity or an officer or employee of a
> governmental entity.

>        (b)  On review the court shall identify cognizable claims or dismiss the
> complaint, or any portion of the complaint, if the complaint –

>>        (1)  is frivolous, malicious or fails to state a claim upon which
>> relief may be granted; or

>>        (2)  seeks monetary relief from a defendant who is immune from
>> such relief.

[3]The predecessor to this section is 28 U.S.C. § 1915(d).  Even though Congress made
many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B) and § 1915A,
the frivolity and the failure to state a claim analysis contained in *Neitzke v. Williams*, 490 U.S.
319, 109 S.Ct. 1827 (1989), was unaltered.  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th  Cir.),
*cert. denied*, 534 U.S. 1044 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4 (6th Cir. 2000).
However, dismissal under § 1915(e)(2)(B), or § 1915A(b), is now mandatory.  *Bilal*, 251 F.3d at
1348-49.

enforce a right that clearly does not exist.  *Id.*  Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Id.*  Moreover, a complaint may be dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984);  *see Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6)).  Dismissal for failure to state a claim is also warranted when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint.  *Jones v. Bock*, ___ U.S. ___, ___, 127 S.Ct. 910, 920-21 (2007).

## III.  Discussion.

Plaintiff claims that the citation is unconstitutional because he was falsely accused and no rule was violated.  These claims are construed as violations of plaintiff's due process rights.  However, before plaintiff may suffer a deprivation of his due process rights, he must have an interest to which due process attaches.  *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974 (1974); U.S. CONST. AMEND. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law. . . .").

The decision in the disciplinary case of  *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct.

4

2293 (1995), applies to cases where behavior citations have been issued.  *Baker v. Hicks,*

CA No. 2:07cv256-WHA, 2007 WL 1625448, at *1-2 (M.D. Ala. June 5, 2007)

(unpublished); *Boglin v. Weaver,* No. Civ. A 00-0620-CB-L, 2001 WL 228172, at *11

(S.D. Ala. Mar. 1, 2001) (unpublshed).  In *Sandin*, the Supreme Court found that there

was no right based directly on the Due Process Clause not to be placed in disciplinary

segregation and that there was no state-created liberty interest to be free from disciplinary

segregation when an inmate challenged his 30-day segregation sentence based on a due

process violation.  *Id*. at 487, 115 S.Ct. at 2302.  In concluding that no liberty interest was

implicated by placement in disciplinary segregation, and thus no due process was

required, the Court stated its holding was a return to the due process principles of *Wolff*,

*supra*, and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532 (1976), that required an

inmate to suffer a "grievous loss" before a liberty interest would be found.  *Sandin*, 515

U.S. at 480-83, 115 S.Ct. at 2298-2300.  The *Sandin* Court ruled that future liberty

interests "will be generally limited to freedom from restraint which, while not exceeding

the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, (citations omitted), nonetheless imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life."[4]  *Id.*

---

[4]The Eleventh Circuit in *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999), expounded
on liberty interests retained by a prisoner once he is incarcerated.

> Determining whether one was deprived of liberty presents a unique
> challenge with prisoners, who are already deprived of their liberty in the
> ordinary understanding of the word.  The Supreme Court has identified
> two situations in which a prisoner can be further deprived of his liberty

at 480, 484, 115 S.Ct. at 2298, 2300.  The Court concluded confinement to disciplinary

segregation was not a dramatic departure from the ordinary conditions of incarceration,

was the type of discipline a prisoner should expect as an incident to his criminal sentence,

and "did not present the type of atypical, significant deprivation in which a state might

conceivably create a liberty interest." *Id.* at 485-86, 115 S.Ct. at 2301.  The Court ruled

the prisoner did not have a protected liberty interest based on the subject prison regulation

or the Due Process Clause itself entitling him to *Wolff*'s procedural protections.  *Id.* at

487, 115 S.Ct. at 2302.         .

In the present action, plaintiff states only that he was placed on restriction for

thirty days and this prevented him from receiving a Christmas package from his mother.

Plaintiff did not identify the type of segregation housing to which he was assigned,

administrative or disciplinary.  The Court deduces that plaintiff was housed in

---

such that due process is required.  The first is when a change in the
prisoner's conditions of confinement is so severe that it essentially
exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515
U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Vitek v. Jones,*
445 U.S. 480, 492-93, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (holding
that a prisoner is entitled to due process prior to being transferred to a
mental hospital).  The second situation is when the state has consistently
bestowed a certain benefit to prisoners, usually through statute or
administrative policy, and the deprivation of that benefit "imposes atypical
and significant hardship on the inmate in relation to the ordinary incidents
of prison life."  *Sandin*, 515 U.S. at 484, 115 S.Ct. 2300; *Wolff v.
McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)
(prisoners may not be deprived of statutory "good-time credits" without
due process).  In the first situation, the liberty interest exists apart from the
state; in the second, the liberty interest is created by the state.  *Bass*, 170
F.3d at 1318.

*Id.* at 1290-91.

administrative segregation because plaintiff is concerned with having only the citation removed from his record and his prior actions filed in this Court indicate that he is normally housed in a one-man cell. However, it is not necessary that the Court resolve this issue in order to decide plaintiff's action. Regardless of the type of segregation, plaintiff's life in segregation is heavily restricted.

When plaintiff was found guilty of the violation and received a behavior citation of thirty days of restriction, his life became more restricted. The Court does not know anything about the nature of the restriction except that it impacted plaintiff when he could not receive his mother's Christmas package to him. Such restriction for a short period of time is less severe punishment than the 30-day confinement to disciplinary segregation in *Sandin*, which was found not to violate the Constitution or to deprive the inmate of a liberty interest. This restriction is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. *See Id.* at 475, 485, 115 S.Ct. at 2296, 2301.

Furthermore, any incarcerated individual is restricted in what he may receive while he is in prison. Even though an inmate has constitutional rights, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the consideration underlying our penal system." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877 (1979) (quotation omitted). "There must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Id.* at 546, 99 S.Ct. at 1878 (quotation omitted). "[M]aintaining

institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights." *Id.*  Once a person is incarcerated, any constitutional right that he has to receive packages is subject to limitations by the institution.  *Id.* at 553-55, 99 S.Ct. at 1882 (approving of the institution's prohibition of receiving packages containing food items or personal property except for one food package at Christmas); *Hook v. Arizona,* 120 F.3d 921 (9th Cir. 2007) (finding the 1973 injunctive decree's limitation that only allowed an inmate to receive packages at Christmas, which were then limited to three, weighing twenty-five pounds each, should be reduced due to increased security concerns and to increased inspections based on the increased number of inmates which could not have been anticipated); *Guajardo v. Estelle,* 580 F.2d 748, 762 (5th Cir. 1978) (upheld the prohibition of sending packages to all inmates because the potential for security risks was substantial and the problem of inspection was severe),[5] *modified on other grounds, Henslee v. Lopez,* 20 F.3d 470 (5th Cir. 1994).  Thus, an absolute constitutional right to receive packages does not survive incarceration.

　　　At this time, it is plaintiff's burden to show that he suffered an "atypical and significant" hardship in order to establish a liberty interest to which due process attaches.  *Cf. Hynes v. Squillace,* 143 F.3d 653, 658-59 (2d Cir.), *cert. denied,* 525 U.S. 907 (1998).

---

[5]The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Plaintiff does not contend that the restriction - the return of his Christmas package from his mother - was an "atypical and significant" hardship, nor does it appear to be so to the Court.  In the Court's handling of numerous prisoner cases over the years, it has observed many situations where a package has been returned to the sender.  Furthermore, plaintiff does not allege that this restriction was a "dramatic departure from the ordinary conditions of confinement" or a "major disruption in [his] environment."  *Sandin,* 515 U.S. at 486, 115 S.Ct. at 2301.  Nor does it appear to be to Court.  Therefore, being restricted from receiving his Christmas package sent by his mother was not an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  *Id.* at 484, 115 S.Ct. at 2300.  *Compare Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir.) (finding that twelve months of solitary confinement "represent[s] substantially more 'atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life,' [and] we assume that [a prisoner suffering such] a liberty deprivation [is] entitled to due process"), *cert. denied*, 519 U.S. 952 (1996), *with Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of constitutionally protected liberty interest).  Thus, the Court concludes that plaintiff did not have a state-created liberty interest in receiving the Christmas package from his mother.

Accordingly, the undersigned finds that plaintiff has failed to establish that he has a liberty interest to which due process attaches.

**IV.  Conclusion.**

9

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this 21st day of August, 2007.


s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      ***Objection***.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE